```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
CALLAWAY GOLF COMPANY, a Delaware    :  10 Civ. 1676 (GBD) (JCF)
corporation,                         :
              Plaintiff,             :       MEMORANDUM
                                     :       AND   ORDER
     - against -                     :
                                     :
CORPORATE TRADE INC., a Nevada       :
corporation; and DOES 1 through 10,  :
inclusive,                           :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Callaway Golf Company ("Callaway") brings this action pursuant to California state law seeking damages arising from a contract with defendant Corporate Trade Inc. ("CTI"). Callaway now moves to compel CTI to respond to one of its document requests; CTI cross-moves for leave to serve requests for admission and deposition notices. For the reasons that follow, both motions are granted in part and denied in part.

Background

In 2003, the parties entered into an agreement whereby CTI transferred $9,382,421.82 worth of trade credits, which are used to purchase media products and services, to Callaway in exchange for Callaway's using KSL Media, Inc. ("KSL") as its exclusive media agency. (Complaint ("Compl."), attached as Exh. A to Declaration of Andrew Small dated March 8, 2011 ("Small Decl."), ¶¶ 9-11 & Exh.

1

2). Callaway understood the agreement to give it unlimited time to use the trade credits without further compensating CTI. (Compl., ¶¶ 11, 17). In contrast, CTI maintains that the agreement obliged Callaway to use the trade credits within sixty months and to compensate CTI for any savings Callaway realized as a result of using the trade credits. (Compl., ¶¶ 14, 15 & Exh. 1, ¶ 4(b)). CTI has produced two letters from Brian Egan, its President, which purport to memorialize both the compensation scheme and the time limit. (Letter of Brian Egan dated July 10, 2003, attached as Exh. 1 to Declaration of Michelle A. Herrera dated Feb. 17, 2011 ("Herrera Decl."); Letter of Brian Egan dated Jan. 20, 2005, attached as Exh. 2 to Herrera Decl.). Callaway claims that it never received the first of these letters and that the signature of its General Counsel, Peter Arturi, which appears on the second of the letters, is forged. (Memorandum of Law in Support of Plaintiff and Counterdefendant Callaway Golf Company's Motion to Compel ("Pl. Memo.") at 2-3; Herrera Decl., ¶ 3). As a result of Callaway's failure to abide by CTI's interpretation of the agreement, CTI claims that Callaway owes it $8,913,300.85. (Defendant's Answer, Affirmative Defenses and Counterclaim at 9, ¶ 23).

Callaway filed this suit in California Superior Court on January 20, 2009, seeking a declaration of the parties' respective rights under the agreement and an award of damages pursuant to

2

California law.  (Compl.).  The defendants removed the suit to the Southern District of California and then successfully moved to transfer venue to the Southern District of New York, where they had filed a related case seeking damages arising out of the same agreement.  (Order dated March 1, 2010, at 3-4, 12).  The Honorable George B. Daniels, U.S.D.J., then entered a scheduling order requiring all discovery to be completed by December 15, 2010. (Order dated June 15, 2010 at 2).  That deadline was later extended to January 31, 2011.  (Memorandum Endorsement dated Jan. 24, 2011 at 1).  On January 27, 2011, the plaintiff filed a motion to compel the deposition of Louise Bradford, a third-party witness; I granted that motion, and Ms. Bradford was deposed on March 2, 2011. (Notice of Motion dated Jan. 27, 2011; Order dated Feb. 14, 2011; Deposition of Louise Burcalow[1] ("Bradford Dep.") dated March 2, 2011, attached as Exh. I to Small Decl.).  The plaintiff filed the instant motion to compel on February 22, 2011; in response the defendant submitted opposition papers and filed its cross-motion.

Discussion

    A. Motion to Compel

On June 14, 2010, Callaway served its First Set of Requests for the Production of Documents.  (Proof of Service dated June 14,

---

[1] Ms. Bradford is also known as Louise Burcalow.  (Bradford Dep. at 4).

3

2010, attached as Exh. 5 to Herrera Decl.). Pursuant to Rule 34(b)(2)(A) of the Federal Rules of Civil Procedure, the defendant had thirty days to respond; when it did not do so, the plaintiff's counsel, Michelle Herrera, contacted CTI's attorney, Andrew Small, to inquire about that failure. (Letter of Michelle A. Herrera dated July 26, 2010, attached as Exh. 6 to Herrera Decl.). Mr. Small claimed not to have received the plaintiff's document requests and asked Ms. Herrera to re-send them, which she did that day by e-mail. (E-mails of Andrew Small and Michelle Herrera dated July 26, 2010, attached as Exh. 7 to Herrera Decl.). CTI served its responses eleven days later, on August 6, 2010. (Defendant/Counterclaim Plaintiff Corporate Trade Inc.'s Response to Plaintiff's First Set of Requests for Production of Documents ("Def. Resp."), attached as Exh. 4 to Herrera Decl.). In its responses, CTI objected to Callaway's request for "[a]ll documents concerning any and all contracts or agreements from January 1, 2001 to the present between [CTI] and any person or entity regarding trade credits" on the grounds that it was overbroad and sought irrelevant information. (Def. Resp. at 2). Callaway thus seeks an order compelling CTI to respond in full to this request.

    1. <u>Waiver</u>

Callaway first argues that CTI has waived its right to object to this document request on any ground by serving its responses

late.  (Pl. Memo. at 4).  Mr. Small admits his tardiness but explains that the delay was caused by ongoing construction at his firm's offices.  (Small Decl., ¶ 3; Defendant CTI's Memorandum of Law in Opposition to Plaintiff's Motion to Compel and in Support of Defendant CTI's Cross-Motion to Enlarge Time for Certain Further Discovery ("Def. Memo.") at 8).  The plaintiff is correct that courts in this district have found a party's right to object to discovery requests waived where the party fails to make a timely response; however, waiver is generally imposed only where the party is unable to provide an explanation for its late response, e.g., Eldaghar v. City of New York Department of Citywide Administrative Services, No. 02 Civ. 9151, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) (finding defendant's right to respond to document requests waived where "defendant could offer no explanation at all for its failure to serve its response in a timely manner"), fails to respond despite court intervention, e.g., Carr v. Queens-Long Island Medical Group, P.C., Nos. 99 Civ. 3706, 02 Civ. 1676, 2003 WL 169793, at *5 (S.D.N.Y. Jan. 24, 2003) (finding plaintiff's right to object to document requests waived where he "delayed producing complete responses until the day before a hearing concerning the failure to comply with court-ordered deadlines for production"), or fails to respond entirely, e.g., Michael Grecco Photography, Inc. v. Everett Collection, Inc., No. 07 Civ. 8171,

2008 WL 4580024, at *3 (S.D.N.Y. Oct. 14, 2008) ("Since the plaintiff wholly failed to respond to the defendant's document request, he has waived any objections."). None of these circumstances are present here. The defendant's responses were only twenty-two days late and followed promptly after Ms. Herrera's reminder letter. Furthermore, Mr. Small has proffered an explanation for the delay. Therefore, the harsh sanction of forfeiture of objections is not appropriate. See, e.g., Harper v. Port Authority, No. 05 Civ. 5534, 2006 WL 1910604, at *1 (S.D.N.Y. July 10, 2006) (finding fifteen-day delay in responding to document requests insufficient to waive right to object); Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *2 (S.D.N.Y. Oct. 23, 2003) (finding defendants' objections to plaintiff's discovery requests not waived despite being over four months late where defendants had proffered reason for delay and plaintiff had not shown prejudice).

    2. Merits

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

6

(1978).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The burden of demonstrating relevance is on the party seeking discovery.  See, e.g., Mandell v. The Maxon Co., No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).

Once relevance has been shown, it is up to the responding party to justify curtailing discovery.  AIU Insurance Co. v. TIG Insurance Co., No. 07 Civ. 7052, 2008 WL 5062030, at *9 (S.D.N.Y. Nov. 25, 2008) (citing Condit, 225 F.R.D. at 106).  "[T]he court must limit the frequency or extent of discovery" when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information."  Melendez, 2003 WL 22434101, at *1.  Generally speaking, discovery is limited only when "sought

7

in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege." In re Six Grand Jury Witnesses, 979 F.2d 939, 943 (2d Cir. 1992); accord Brassco, Inc. v. Klipo, No. 99 Civ. 3014, 2004 WL 1385816, at *2 (S.D.N.Y. June 21, 2004).

The challenged request seeks documents that are clearly relevant to Callaway's claims. The plaintiff's primary allegation is that CTI wrongfully added new terms to their trade credit agreement, which Callaway did not bargain for or agree to. One of its strategies for proving this claim is to show that TI would not typically memorialize these terms in letters that exist separately from the parties' "formalized, written agreements." (Pl. Memo. at 5-6). The absence of the disputed terms in other trade credit agreements would also support Callaway's position that the terms themselves are so "illogical, onerous and one-sided" that no sophisticated party would ever agree to them. (Pl. Memo. at 5). Because California contract law allows for the admission of extrinsic evidence where a disputed contract is susceptible to more than one interpretation, the agreements sought here would likely be admissible in this litigation, thus rendering them relevant in the evidentiary sense as well as in the discovery sense. See Headlands Reserve, LLC v. Center For Natural Lands Management, 523 F. Supp. 2d 1113, 1127 n.6 (C.D. Cal. 2007) ("'The test of admissibility of

extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and ambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'" (internal alteration omitted) (quoting <u>Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.</u>, 109 Cal. App. 4th 944, 955, 135 Cal. Rptr. 2d 505, 513-14 (4th Dist. 2003)).  The agreements are thus within the appropriate scope of discovery.

Callaway's document request is nevertheless overbroad relative to its asserted goals.  Callaway does not need to examine every trade credit agreement that CTI has entered into since 2001 in order to determine whether CTI included the challenged terms in any of them.  Rather, CTI shall produce only those contracts or agreements from the period January 1, 2001 through the present that pertain to trade credits and contain a term either (1) setting a time limit for the use of the trade credits or (2) requiring a portion of any savings realized as a result of using the trade credits to be remitted to CTI.  To place any such documents in context, CTI shall also identify all of the trade credit contracts or agreements it entered into during the same period.

    B. <u>Cross-Motion to Reopen Discovery</u>

Rule 16 of the Federal Rules of Civil Procedure allows a

scheduling order to "be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends on the diligence of the moving party," Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003), although prejudice to the non-moving party is also relevant, Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007). Courts in the Second Circuit often consider additional factors, including "the imminence of trial," "whether the request is opposed," and "whether further discovery is likely to lead to relevant evidence." Jeannite v. City of New York Department of Buildings, No. 09 Civ. 3464, 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010).

The parties' discovery deadline passed on January 31, 2011, and CTI requests leave to reopen discovery for three purposes: (1) to serve its First Set of Requests for Admission, (2) to take the deposition of Mr. Arturi, and (3) to take the deposition of George Fellows, Callaway's CEO. (Def. Memo. at 8-10). I will address each request in turn.

### 1. Requests for Admission

CTI first asks for leave to serve its First Set of Requests for Admission. (Defendant/Counterclaim Plaintiff's First Set of Request for Admissions, attached as Exh. G to Small Decl.). It argues that this discovery is necessary to "narrow the issues for trial" and "expedite" the case "in a resource effective manner."

(Def. Memo. at 8-9). CTI states that its request is late because it did not realize the need for this discovery until it first received certain deposition transcripts in February of 2011. (Def. Memo. at 8). However, the defendant has failed to explain how this discovery will contribute to the efficient progress of this matter, especially given the general nature of the admissions sought and the burden of responding to them. Therefore, the request is denied.

### 2. Deposition of Peter Arturi

CTI next seeks leave to take the deposition of Peter Arturi. It claims that only during the deposition of Mr. Egan, which was held on January 20, 2011, did it learn that Callaway was accusing Mr. Egan of forging Mr. Arturi's signature on a document at the heart of this dispute -- the January 20, 2005 letter from Mr. Egan confirming the time-limited nature of the trade credits. (Def. Memo. at 9; Defendant's Memorandum of Law in Reply to Plaintiff's Opposition to Cross-Motion to Enlarge Time and for Certain Discovery ("Def. Reply Memo.") at 5). The plaintiff admits that it first made this accusation of forgery during Mr. Egan's deposition, but it argues that CTI was nevertheless insufficiently diligent in seeking to depose Mr. Arturi because it had long known that Mr. Arturi's signature appears on the letter. (Memorandum of Law in Support of Plaintiff and Counterdefendant Callaway Golf Company's

11

Opposition to Defendant and Counterclaimant Corporate Trade, Inc.'s Cross-Motion to Enlarge Time for Certain Further Discovery at 5). This argument misses the mark. It is the allegation of forgery, not the presence of Mr. Arturi's alleged signature on the letter, that goes to the heart of the dispute in this matter. CTI had no obvious reason to question Mr. Arturi about his signature until it learned of the allegation of forgery; now, however, Mr. Arturi's deposition is of central relevance to the defendant's claims and defenses. Moreover, given the eleven-day window between Mr. Egan's deposition and the discovery deadline, CTI did not fail in its obligation to be diligent, and Callaway has made no assertion of prejudice. Therefore, the plaintiff shall produce Mr. Arturi for deposition within thirty days of this order.

      3. <u>Deposition of George Fellows</u>

    Finally, CTI seeks leave to depose Mr. Fellows. It explains that this request comes after the discovery deadline because it only learned of certain conversations Mr. Fellows had with Ms. Bradford and other individuals "about trade credits and CTI's benefits to Callaway" at Ms. Bradford's deposition on March 2, 2011. (Def. Memo. at 9-10; <u>see also</u> Def. Reply Memo. at 6; Small Decl., ¶ 15; Declaration of Brian Egan dated March 8, 2011, ¶ 7). CTI asserts that Mr. Fellows's understanding of the trade credits agreement is highly relevant because it would shed light on the

plaintiff's knowledge of the disputed terms. (Def. Reply Memo. at 6). But the defendant has not explained why Mr. Fellows is the appropriate person to depose in this respect. To the extent that Ms. Bradford has stated that she and other individuals gave Mr. Fellows information about the terms of the disputed agreement, it is Ms. Bradford herself -- and the other individuals who allegedly gave information to Mr. Fellows -- who would have the best knowledge of what they said to him. Therefore, CTI has not shown good cause to depose Mr. Fellows, and its request is denied.

Conclusion

   For the reasons set forth above, CTI is ordered to produce copies of any contract or agreement pertaining to trade credits that it entered into during the period January 1, 2001 through the present that contains a term either (1) setting a time limit for the use of the trade credits or (2) requiring a portion of any savings realized as a result of using the trade credits to be remitted to CTI. It shall also identify all trade credit agreements it entered into during the same period. Callaway is ordered to produce Peter Arturi for deposition by May 13, 2011. The pretrial order shall be submitted by June 15, 2011 unless any dispositive motion is filed by that date. If such a motion is filed, the pretrial order shall be submitted thirty days after the motion is decided.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 25, 2011


Copies mailed this date:

Caryn M. Anderson, Esq.
Edward P. Swan, Jr., Esq.
Michelle A. Herrera, Esq.
Luce, Forward, Hamilton & Scripps, LLP
600 Wes Broadway, Suite 2600
San Diego, CA  92101

Howard W. Burns, Jr., Esq.
Law Office of Howard W. Burns, Jr.
170 Broadway, Suite 609
New York, New York  10038

Andrew B. Small, Esq.
A. Bruce Small PLLC
230 Park Avenue, Suite 2525
New York, New York  10169

John P. Gleason, Esq.
Gleason & Koatz, LLP
122 East 42nd Street, Suite 519
New York, New York  10168

Bruce S. Elder, Esq.
Micha Danzig, Esq.
Mintz Levin Cohn Ferris Glovsky & Popeo
3580 Carmel Mountain Road, Suite 300
San Diego, CA  92130